# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARVEEN KUMAR,<br><br>               Petitioner,<br><br>v.<br><br>CRHISTOPHER CHESTNUT, et al.,<br><br>               Respondents. | Case No. 1:26-cv-00669-JLT-SKO (HC)<br><br>ORDER CONVERTING THE MATTER TO A PRELIMINARY INJUNCTION[1]; GRANTING THE PRELIMINARY INJUNCTION IN PART; AND REFERRING THE MATTER TO THE ASSIGNED MAGISTRATE<br><br>(Doc. 2) |

## I.      INTRODUCTION

Before the Court is Parveen Kumar's request for a temporary restraining order (Doc. 2), filed in conjunction with his petition for a writ of habeas corpus brought under 28 U.S.C. § 2241 challenging his ongoing detention. (Doc. 1.) Having evaluated the TRO request and Respondents' opposition (Doc. 8), the Court converts the matter into a motion for preliminary injunction, **GRANTS** that motion **IN PART**, and **REFERS** the matter to the assigned magistrate judge for a determination on the merits.

## II.      FACTUAL & PROCEDURAL BACKGROUND

Petitioner is a 27-year-old citizen of India who entered the United States without inspection on or about August 27, 2024 where he was encountered by the Department of Homeland Security. (Doc. 2 at 7.) Petitioner was released from initial border custody on April

---

[1] The parties agreed that the motion for temporary restraining order could be converted to a preliminary injunction. (Doc. 2 at 21; Doc. 9 at 2.) The parties have also declined an evidentiary hearing. (*Id.*)

30, 2024 and was subject to certain supervision requirements, including electronic monitoring and daily SmartLINK photo uploads. (*Id*.) Petitioner completed his first ICE check-in on May 13, 2024, and Immigration and Customs Enforcement installed a GPS wrist-style monitoring device and an application on Petitioner's phone on May 14, 2024. (*Id*.) Petitioner asserts that he appeared for all Immigration Court hearings, complied with all ICE check-ins, has no criminal history, and timely filed his Form 1-589 asylum application on May 17, 2024. (*Id*.) His removal proceedings remain pending before the Concord Immigration Court, with an individual hearing scheduled for June 1, 2026. (*Id*.)

Since arriving in the United States, Petitioner has continuously resided in Turlock, California, where he received employment authorization and holds a valid Employment Authorization Document valid from November 13, 2024 through November 12, 2029. (*Id*.) In January 2025, Petitioner passed his commercial driving license exam and requested permission from ICE to travel and work as a commercial truck driver in all 48 states. (*Id*.) Between February 20 and February 28, 2025, ICE granted this permission. (*Id*.) Petitioner also maintained strong community ties through the Sikh Temple Turlock, where he regularly attended Sunday services, volunteered with cleaning and landscaping, and served Langar to the congregation. (*Id*.)

On January 2, 2026, Petitioner received a text message from instructing him to report to ICE on January 5, 2026. (*Id*. at 8.) At that time, he was in Minnesota for work as a commercial truck driver. (*Id*. at 8.) He replied to the message stating that he could appear on January 6, 2026, because he was not in California. (*Id*. at 8.) On January 6, 2026, Petitioner reported to the Stockton ICE office as he had communicated but was taken into custody upon arrival. (*Id*. at 8.) ICE officers informed him that the grounds for his arrest were a missed a virtual office visit scheduled in October 2025 and low battery levels on his monitoring device. (*Id*. at 8.) Petitioner explained to the officers that he was in another state traveling for work as a commercial truck driver. (*Id*. at 8.) Petitioner is currently held at the California City Detention Center in California City, California.

The government opposes the issuance of preliminary injunctive relief and maintains that Petitioner's detention is "mandatory" under expedited removal procedures set forth at 8 U.S.C.

§ 1225(b)(2). (*See generally* Doc. 8.)

### III.   LEGAL STANDARD

The standard governing the issuing of a TRO is "substantially identical" to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co*., 240 F.3d 832, 839 n. 7 (9th Cir. 2001). A party seeking a preliminary injunction must establish: (1) they are "likely to succeed on the merits" of their claims, (2) they are "likely to suffer irreparable harm in the absence of a preliminary injunction," (3) "the balance of equities tips in [their] favor" and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Ctr. For Food Safety v. Vilsack,* 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'").

The party seeking a preliminary injunction has the burden to "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011); *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (holding that the moving party has "the burden of persuasion"); *see also Hecox v. Little*, 104 F.4th 1061, 1073 (9th Cir. 2023). The Court may weigh the request for a preliminary injunction with a sliding-scale approach. *Alliance*, at 1135 (9th Cir. 2011). Accordingly, a stronger showing on the balance of hardships may support the issuance of a preliminary injunction where there are "serious questions on the merits … so long as the plaintiff also shows that there is a likelihood of irreparable injury, and that the injunction is in the public interest." *Id.*  Finally, "a preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24.

### IV.   ANALYSIS

**A.   Likelihood of Success on the Merits**

This first factor "is the most important" under *Winter*, and "is especially important when a plaintiff alleges a constitutional violation and injury." *Baird v. Bonta*, 81 F.4th 1036, 1041 (9th Cir. 2023). Petitioner argues he is likely to succeed on his claim that Respondents violated his Fifth Amendment Due Process rights when he was detained without notice or provided a custody hearing before a neutral arbiter. (Doc. 2 at 13-21.)

3

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Session, 872 F.3d 976*, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. *Id*. at 693–94. "Even when the government has discretion to detain an individual, its subsequent decision to release the individual creates 'an implicit promise' that she will be re-detained only if she violates the conditions of her release." *Garro Pinchi v. Noem*, No. 25-CV-05632-PCP, --- F. Supp. 3d. ----, 2025 WL 3691938, at *30 (N.D. Cal. Dec. 19, 2025) (citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). Other courts, including this Court, have held similarly. *J.E.H.G. v. Chestnut*, No. 1:25-CV-01673-JLT-SKO, 2025 WL 3523108, at *10 (E.D. Cal. Dec. 9, 2025) (citing *Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *4 (E.D. Cal. Mar. 3, 2025)).

In analyzing procedural due process claims such as this one, courts must first determine whether a protected liberty interest exists under the Due Process Clause. *See Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460 (1989.) If a protected liberty interest is found to exist, the court then must examine whether the procedures necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. (*Id.*) To the extent that Respondents substantively address Petitioner's due process argument, they deploy a blanket assertion that Petitioner is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) of the INA and therefore categorically ineligible for a bond hearing. (Doc. 8 at 2.)

Although Petitioner's claim is ultimately constitutional in nature, it turns on whether section 1225(b) or section 1226(a) justify Petitioner's re-detention. Courts nationwide, including this one, have overwhelmingly rejected Respondents' new legal position and found the DHS policy unlawful. *See, e.g.*, *Ortiz Donis v. Chestnut*, 1:25-CV-01228-JLT, 2025 WL 2879514 at *3–6 (E.D. Cal. Oct. 9, 2025); *see also*, *M.R.R. v. Chestnut*, No. 1:25-CV-01517-JLT, 2025 WL

3265446 (E.D. Cal. Nov. 24, 2025); *Hortua v. Chestnut*, et al., No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 (E.D. Cal. Dec. 9, 2025); *Barco Mercado v. Francis*, No. 25-CV-6582 (LAK), —— F.Supp.3d ——, ——, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (estimating over 350 cases ruled the DHS policy improper across 160 different judges sitting in about 50 different courts nationwide); *Mirley Adriana Bautista Pico, et al. v. Kristi Noem, et al.*, No. 25-CV-08002-JST, 2025 WL 3295382, at *2 (N.D. Cal. Nov. 26, 2025) (collecting cases); *Armando Modesto Estrada-Samayoa v. Orestes Cruz, et al.*, No. 1:25-CV-01565-EFB (HC), 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases).

Even assuming Respondents are correct that § 1225(b) is the applicable detention authority for all "applicants for admission," Respondents fail to meaningfully contend with the liberty interest created by the fact that the Petitioner in this case was released on recognizance in August 2024 before the current manifestation of this interpretation. Thus, the Court must evaluate the three-part test set forth in *Mathews v. Eldridge,* 424 U.S. 319, 334-335 (1976), to determine whether the procedures (or lack thereof) that have been applied to Petitioner are sufficient to protect the liberty interest at issue. *Pinchi*, 2025 WL 2084921at *3. In *Mathews*, the Court determined the following:

> [O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

During his time on parole, Petitioner built a life outside detention. Petitioner has a substantial private interest in being out of custody and his detention denies him that liberty interest. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

In *Rocha Chavarria v. Chestnut*, the Court recently found that the Petitioner had demonstrated a likelihood of success on the merits of his procedural due process claim because

5

(1) he had demonstrated a liberty interest in his continued release, and (2) that his continued detention without written notice and a hearing was unlawful. *Rocha Chavarria v. Chestnut*, No. 1:25-cv-1755-DAD-AC, 2025 WL 3533606, *5 (E.D. Cal. Dec. 9, 2025). The court ordered the immediate release of Petitioner who allegedly "incurred compliance violations" that were not identified and where respondents did not suggest the alleged violations were the reason for petitioner's re-detention. (*Id.*) *See also, Gholami v. Chestnut*, No. 1:25-CV-01644-DAD-DMC (HC), 2025 WL 3640675 (E.D. Cal. Dec. 16, 2025) (construing Respondent's non-responsiveness and unsubstantiated allegations of release violations as concessions that the present matter and *Rocha Chavarria* were not substantively distinguishable).

Unlike the Respondent in *Rocha Chavarria*, Petitioner's admitted failure to report for a virtual home visit constitutes sufficient supporting evidence regarding the quantity, nature and substance of Petitioner's alleged reporting violations and rationale for re-arresting him. *C.f. C.A.R.V. v. Wofford*, No. 1:25-cv-01395-JLT-SKO, 2025 WL 3059549, at *5 (E.D. Cal. Nov. 3, 2025) (finding "key factual assertions" made by Respondents were not adequately supported when the deportation officer did not state the "basis for personal knowledge for the facts claimed in his declaration.").

Nevertheless, the Court finds there is at least some risk of erroneous deprivation under the present circumstances, with the record suggesting several reasons why Petitioner's detention may not be justified. First, in 2024, in releasing him on parole, DHS necessarily concluded that he was not a flight risk or danger to the community. *Noori v. LaRose, et al.*, 2025 WL 2800149, at 13* (S.D. Cal. Oct. 1, 2025) (In general, '[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.'" *Saravia v. Sessions,* 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. *Saravia for A.H. v. Sessions,* 905 F.3d 1137 (9th Cir. 2018)."

The Supreme Court has held that "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). However, the Court also recognized that there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate.

*Id.* at 128 (noting there may be "special case[s]" where a pre-deprivation hearing is impracticable); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *9 (N.D. Cal. July 17, 2025) ("absent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ"). The rapidly developing caselaw on this subject gives limited guidance as to where this line should be drawn. Some courts that have addressed detention-related habeas petitions brought by persons released with enhanced supervision conditions have required pre-deprivation process, but in somewhat different circumstances. In *E.A.T.-B. v. Wamsley*, No. C25-1192-KKE, 2025 WL 2402130, at *4 (W.D. Wash. Aug. 19, 2025), the district court ordered the release of a petitioner arrested by ICE immediately after appearing in immigration court. That court agreed with the petitioner that ICE's post hoc explanation that violations warranted his detention was pretextual, given that ICE first became aware of petitioner's alleged violations a few hours before his immigration hearing, DHS did not raise those violations at the hearing or argue the petitioner should be detained for any reason, and the petitioner was then provided multiple, inconsistent justifications for his arrest. *Id*. In *Arzate v. Andrews*, No. 1:25-CV-00942-KES-SKO (HC), 2025 WL 2230521, at *7 (E.D. Cal. Aug. 4, 2025), converted to preliminary injunction sub nom, 2025 WL 2411010, at *1 (E.D. Cal. Aug. 20, 2025), the court ordered immediate release of in immigration detainee who had been in compliance with his conditions of release, even though he had incurred a misdemeanor arrest while on parole, in part because no charges were ever filed.

In contrast, this Court ordered a bond hearing in *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767 (E.D. Cal. Aug. 28, 2025), where the petitioner's records indicated numerous violations. Though Martinez Hernandez offered explanations for the violations and there was a dispute of fact as to whether the violations occurred, ICE's reliance upon those violations was "not obviously pretexual." *Id*. at * 12 ("If Respondent's view of the facts is correct, it is at least arguable that providing Petitioner with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight."). As this Court noted in *Martinez Hernandez*:

> In similar circumstances, courts have refused to release the petitioners but have ordered timely bond hearings. *Carballo v. Andrews*, No. 1:25-CV-00978-KES-EPG (HC), 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025), citing *Perera v. Jennings*, et. al, No. 21-CV-04136-BLF, 2021 WL 2400981, at *5 (N.D. Cal. June 11, 2021); *Pham v. Becerra*, No. 23-CV-01288-CRB, 2023 WL 2744397, at *6 (N.D. Cal. Mar. 31, 2023). "[A]llowing a neutral arbiter to review the facts would significantly reduce the risk of erroneous deprivation." *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *8 (N.D. Cal. July 17, 2025). Thus, the Court concludes that prompt, post-deprivation process is required here.

*Id*. Finally, as to the third *Mathews* factor, this Court concludes that the government's interest in detaining Petitioner without proper process is slight. "Since respondents did not engage with Petitioner's due process arguments, they have not provided the court with any information regarding the burden on the government." *Rocha Chavarria,* 2025 WL 3533606, at *4. In sum, sum, the Court concludes that Petitioner has demonstrated a likelihood of success on the merits on his due process claim.

### B. Remaining Preliminary Injunction Factors

The remaining preliminary injunction factors—irreparable harm, the balance of equities, and the public interest—decidedly weigh in favor of Petitioner. "[I]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes irreparable harm."). By successfully demonstrating that Respondents lack a basis to detain him, Petitioner has succeeded in showing irreparable harm.

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). The Court finds there is no equitable reason that would tip the balance in the Government's favor. Though the government has a compelling interest in enforcing the immigration laws, granting relief to Petitioner will not seriously impinge its ability to do so.  The Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being

enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Moreover, "the public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (quoting *Jorge M.F. v. Wilkinson*, No, 21-cv-01434, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021)). In sum, the last two *Winter* factors also weigh in Petitioner's favor.

**V.      CONCLUSION AND ORDER**

1.      Petitioner's Motion for Temporary Restraining Order (Doc. 2) is converted to a Motion for Preliminary Injunction, and it is **GRANTED in PART.**

2.      Petitioner **SHALL** be provided a **substantive** bond hearing **no later than February 24, 2026,** at which the Immigration Judge will determine whether Petitioner poses a risk of flight or a danger to the community if he is released.

3.      At any such hearing, the Government **SHALL** bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner **SHALL** be allowed to have counsel present.

4.      The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. See *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011). Courts regularly waive security in cases like this one. *See, e.g.*, *Zakzouk v. Becerra*, No. 25-cv-06254, 2025 WL 2899220, at *8 (N.D. Cal. Oct. 10, 2025).

5.    The parties are directed to meet and confer no later than 14 days from the date of the entry of this order, and, if possible, submit a joint proposed briefing schedule discussing the abeyance of further proceedings on the merits pending the 9th Circuit Appeal of *Rodriguez Vazquez v. Bostock,* 779 F.Supp.3d 1239 (W.D. Wash. 2025). If the parties are unable to agree to a joint proposed briefing schedule, the Court will rule on the request.

6.      The government may file a further brief on the merits of the habeas petition within 30 days. Alternatively, as soon as it can within that 30-day period, the government may file a notice that it does not intend to file further briefing. If the government files an additional

brief, Petitioner may file a further brief within 30 days thereafter.

5.     The matter is referred to the assigned magistrate judge for consideration of the merits of the petition as quickly as possible.

IT IS SO ORDERED.

Dated:   **February 10, 2026**

UNITED STATES DISTRICT JUDGE

10