UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

PARVEEN K.,[1]

Petitioner,

v.

CHRISTOPHER CHESTNUT, et al.,

Respondents.

No.  1:26-cv-00669-JLT-SKO (HC)

**FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS**

**(Doc. 1)**

**[21-DAY OBJECTION DEADLINE]**

Petitioner Parveen K. is a noncitizen whom immigration authorities released on August 27, 2024, under 8 U.S.C. § 1226(a), but then re-detained on January 6, 2026.  On January 26, 2026, Petitioner filed the instant habeas petition along with a motion for temporary restraining order ("TRO"). (Docs. 1, 2.) On February 10, 2026, the Court converted the motion for TRO into a motion for preliminary injunction and granted said motion. (Doc. 9.) Per the Court's order, Respondents were directed to provide Petitioner a substantive bond hearing no later than February 24, 2026, at which the Immigration Judge was to determine whether Petitioner poses a risk of flight or danger to the community if released. (Doc. 9 at 9.)  Further, the parties were directed to meet and confer regarding a possible stay pending the Ninth Circuit's appeal of Rodriguez v.

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only his first name and last initial, to protect sensitive personal information. See Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

Bostock, 779 F.Supp.3d 1239 (W.D. Wash. 2025) and advise the Court of a proposed briefing schedule. In addition, the parties were advised that they could submit further briefing. The matter was referred to the undersigned for further proceedings including preparation of findings and recommendations on the petition or other appropriate action.

On February 25, 2026, the parties filed a joint status report. (Doc. 10.) According to the status report, the substantive hearing did not occur on February 24, 2026, as had been ordered. Upon discovery of this error, Respondents immediately scheduled Petitioner for a bond hearing on February 25, 2026. However, Petitioner's counsel was not aware of the scheduled hearing in time to prepare, having been notified only one hour before the hearing was scheduled. In light of this development, the parties agree to submit on all prior briefings and request the Court rule on the petition at its earliest convenience.

## I.      FACTUAL BACKGROUND

For judicial efficiency, the Court restates the background set forth in the order granting preliminary injunction:

Petitioner is a 27-year-old citizen of India who entered the United States without inspection on or about August 27, 2024 where he was encountered by the Department of Homeland Security. (Doc. 2 at 7.) Petitioner was released from initial border custody on April 30, 2024 and was subject to certain supervision requirements, including electronic monitoring and daily SmartLINK photo uploads. (*Id*.) Petitioner completed his first ICE check-in on May 13, 2024, and Immigration and Customs Enforcement installed a GPS wrist-style monitoring device and an application on Petitioner's phone on May 14, 2024. (*Id*.) Petitioner asserts that he appeared for all Immigration Court hearings, complied with all ICE check-ins, has no criminal history, and timely filed his Form 1-589 asylum application on May 17, 2024. (*Id*.) His removal proceedings remain pending before the Concord Immigration Court, with an individual hearing scheduled for June 1, 2026. (*Id*.)

Since arriving in the United States, Petitioner has continuously resided in Turlock, California, where he received employment authorization and holds a valid Employment Authorization Document valid from November 13, 2024 through November 12, 2029. (*Id*.) In January 2025, Petitioner passed his commercial driving license exam and requested permission from ICE to travel and work as a commercial truck driver in all 48 states. (*Id*.) Between February 20 and February 28, 2025, ICE granted this permission. (*Id*.) Petitioner also maintained strong community ties through the Sikh Temple Turlock, where he regularly attended Sunday services, volunteered with cleaning and landscaping, and served Langar to the congregation. (*Id*.)

On January 2, 2026, Petitioner received a text message from instructing him to report to ICE on January 5, 2026. (*Id*. at 8.) At that time, he was in Minnesota for

2

work as a commercial truck driver. (*Id*. at 8.) He replied to the message stating that he could appear on January 6, 2026, because he was not in California. (*Id*. at 8.) On January 6, 2026, Petitioner reported to the Stockton ICE office as he had communicated but was taken into custody upon arrival. (*Id*. at 8.) ICE officers informed him that the grounds for his arrest were a missed a virtual office visit scheduled in October 2025 and low battery levels on his monitoring device. (*Id*. at 8.) Petitioner explained to the officers that he was in another state traveling for work as a commercial truck driver. (*Id*. at 8.) Petitioner is currently held at the California City Detention Center in California City, California.

(Doc. 9 at 1-2.)

## II.    JURISDICTION AND LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). A district court may grant a writ of habeas corpus when the Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) (citing Singh v. Holder, 638 F.3d 1196, 1211–12 (9th Cir. 2011)).

## III.    DISCUSSION

Civil immigration detention is typically justified only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas v. Davis, 533 U.S. 678, 690 (2001); Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).  Petitioner contends that the Due Process Clause bars the Government from re-detaining him without providing a hearing where it must prove he is a flight risk or danger.  (Doc. 1 at 18-19.) As the basis for Petitioner's detention, Respondents urge the Court to adopt reasoning consistent with the new DHS guidance—that Petitioner's recent re-detention is mandatory under section 1225(b).  Accordingly, before turning to the standard due process analysis, the Court will address the threshold matter of whether Petitioner's re-detention is properly understood to be authorized by section 1225(b) as Respondents contend or under section 1226(a) as Petitioner contends.

When first presented with the Government's new interpretation of section 1225(b)(2)(A), some courts described this read of the statute as "novel."  See, e.g., Barrera v. Tindall, No. 3:25-

3

CV-541-RGJ, 2025 WL 2690565, at *5 (W.D. Ky. Sept. 19, 2025).  Since then, this interpretation has been almost universally rejected by district courts throughout the country, including this Court. Valencia v. Chestnut, 2025 WL 3205133, at *2 (E.D. Cal. Nov. 17, 2025) (noting that "[h]ere in the Eastern District of California, recent decisions have largely rejected the government's interpretation of Section 1225(b)(2) as applicable to all 'applicants for admission,'" recognizing "[o]ther district courts have also reached the result that Section 1226(a), not Section 1225(b)(2), provides the appropriate framework for noncitizens already residing in the United States," and collecting cases). As it has done on previous occasions, this Court recommends following the majority approach in finding that Petitioner's re-detention is governed by § 1226(a), not § 1225(b)(2)(A). See, e.g., Ortiz Donis v. Chestnut, 1:25-CV-01228-JLT, 2025 WL 2879514 at *3–6 (E.D. Cal. Oct. 9, 2025); see also M.R.R. v. Chestnut, No. 1:25-CV-01517-JLT, 2025 WL 3265446 (E.D. Cal. Nov. 24, 2025); Hortua v. Chestnut, et al., No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 (E.D. Cal. Dec. 9, 2025); Barco Mercado v. Francis, No. 25-CV-6582 (LAK), ⸺ F.Supp.3d ⸺, ⸺, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (estimating over 350 cases ruled the DHS policy improper across 160 different judges sitting in about 50 different courts nationwide); Mirley Adriana Bautista Pico v. Kristi Noem, No. 25-CV-08002-JST, 2025 WL 3295382, at *2 (N.D. Cal. Nov. 26, 2025) (collecting cases); Armando Modesto Estrada-Samayoa v. Orestes Cruz, No. 1:25-CV-01565-EFB (HC), 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases).

The Court next turns to the analysis of Petitioner's due process claim.  Due process claims are analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).

### A.  Petitioner Possesses a Protected Liberty Interest.

A protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147–49 (1997).  Even when a statute allows the Government to

arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute.  See id. (due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context).  To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey."  Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life."  Morrissey, 408 U.S. at 482.  "Though the [Government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted).  Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481–84.

Immigration officials' April 30, 2024, release of Petitioner on his own recognizance pending his immigration proceedings was similar, in that it allowed him to live in the country subject to supervision, but outside of custody, for nearly 2 years.  And that time inherently allowed Petitioner to form "enduring attachments of normal life." Id. at 482.  The Court concludes that Petitioner's original release and time out of custody gave rise to a constitutionally protective liberty interest.

Because the Court concludes that Petitioner has a protected liberty interest in his release, see Guillermo M. R. v. Kaiser, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration

detention] is *inherent* in the Due Process Clause"); Ortega v. Kaiser, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest), the Court must next determine what process is due before the Government may terminate Petitioner's liberty.

### B.  The Mathews Factors Demonstrate Petitioner is Entitled to a Bond Hearing

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990).  The procedural protections required in a given situation may be evaluated using the Mathews v. Eldridge factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)); see Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context).

Turning to the first factor, Petitioner has a significant private interest in remaining free from detention.  "Freedom from imprisonment—from Government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001).  Petitioner had been out of custody for nearly 2 years, and during that time, he has lived, worked, and developed ties in the community. His detention denies him that freedom.

Second, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the Petitioner] has not received any bond or custody redetermination hearing." A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690; Padilla, 704 F. Supp. 3d at 1172.  Nevertheless, Respondents claim re-detention was justified because Petitioner admittedly failed to report for a virtual home visit. Petitioner's admission constitutes sufficient supporting evidence regarding the quantity, nature and substance of

Petitioner's alleged reporting violations and rationale for re-arresting him. C.f. C.A.R.V. v. Wofford, No. 1:25-cv-01395-JLT-SKO, 2025 WL 3059549, at *5 (E.D. Cal. Nov. 3, 2025) (finding "key factual assertions" made by Respondents were not adequately supported when the deportation officer did not state the "basis for personal knowledge for the facts claimed in his declaration.").

The Court, however, finds there is at least some risk of erroneous deprivation under the present circumstances, with the record suggesting several reasons why Petitioner's detention may not be justified. First, in 2024, in releasing him on parole, DHS necessarily concluded that he was not a flight risk or danger to the community. Noori v. LaRose, et al., 2025 WL 2800149, at 13* (S.D. Cal. Oct. 1, 2025) (In general, '[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.'"); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom.* Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018)."

The Supreme Court has held that "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." See Zinermon v. Burch, 494 U.S. 113, 127 (1990) (emphasis in original). The Court has also recognized that there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate. Id. at 128 (noting there may be "special case[s]" where a pre-deprivation hearing is impracticable); Guillermo M. R. v. Kaiser, No. 25-CV-05436-RFL, 2025 WL 1983677, at *9 (N.D. Cal. July 17, 2025) ("absent evidence of urgent concerns, a pre-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ"). The rapidly developing caselaw on this subject gives limited guidance as to where this line should be drawn. Some courts that have addressed detention-related habeas petitions brought by persons released with enhanced supervision conditions have required pre-deprivation process, but in somewhat different circumstances. In E.A.T.-B. v. Wamsley, No. C25-1192-KKE, 2025 WL 2402130, at *4 (W.D. Wash. Aug. 19, 2025), the district court ordered the release of a petitioner arrested by ICE immediately after appearing in immigration court. That court agreed with the petitioner that ICE's post hoc explanation that violations warranted his detention was pretextual, given that ICE first

became aware of petitioner's alleged violations a few hours before his immigration hearing, DHS did not raise those violations at the hearing or argue the petitioner should be detained for any reason, and the petitioner was then provided multiple, inconsistent justifications for his arrest. Id. In Arzate v. Andrews, No. 1:25-CV-00942-KES-SKO (HC), 2025 WL 2230521, at *7 (E.D. Cal. Aug. 4, 2025), *converted to preliminary injunction sub nom*, 2025 WL 2411010, at *1 (E.D. Cal. Aug. 20, 2025), the court ordered immediate release of an immigration detainee who had been in compliance with his conditions of release, even though he had incurred a misdemeanor arrest while on parole, in part because no charges were ever filed.

In contrast, this Court ordered a bond hearing in Martinez Hernandez v. Andrews, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767 (E.D. Cal. Aug. 28, 2025), where the petitioner's records indicated numerous violations. Though Martinez Hernandez offered explanations for the violations and there was a dispute of fact as to whether the violations occurred, ICE's reliance upon those violations was "not obviously pretexual." Id. at * 12 ("If Respondent's view of the facts is correct, it is at least arguable that providing Petitioner with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight."). As this Court noted in Martinez Hernandez:

> In similar circumstances, courts have refused to release the petitioners but have ordered timely bond hearings. *Carballo v. Andrews*, No. 1:25-CV-00978-KES-EPG (HC), 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025), citing *Perera v. Jennings, et. al,* No. 21-CV-04136-BLF, 2021 WL 2400981, at *5 (N.D. Cal. June 11, 2021); *Pham v. Becerra*, No. 23-CV-01288-CRB, 2023 WL 2744397, at *6 (N.D. Cal. Mar. 31, 2023). "[A]llowing a neutral arbiter to review the facts would significantly reduce the risk of erroneous deprivation." *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *8 (N.D. Cal. July 17, 2025). Thus, the Court concludes that prompt, post-deprivation process is required here.

Id. Finally, as to the third Mathews factor, this Court concludes that the government's interest in detaining Petitioner without proper process is slight. "Since respondents did not engage with Petitioner's due process arguments, they have not provided the court with any information regarding the burden on the government." Rocha Chavarria, 2025 WL 3533606, at *4.

On balance, the Mathews factors show that Petitioner is entitled to a bond hearing.  And consistent with the numerous decisions of other courts in this circuit who have ruled on this issue, at such a hearing the burden would be on the Government to prove that Petitioner is a flight risk

or danger to the community by clear and convincing evidence.  See, e.g., Ramirez Clavijo v. Kaiser, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4–6 (N.D. Cal. Aug. 21, 2025) (reaching the same conclusion); Garcia, 2025 WL 1927596, at *5 (same); Pinchi v. Noem, No. 25-CV-05632-RMI (RFL), 2025 WL 1853763, at *1 (N.D. Cal. July 4, 2025) (same); Ortega, 415 F. Supp. 3d at 970 (same); Doe, 2025 WL 691664, at *6 (same); Diaz v. Kaiser, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025) (same); Romero v. Kaiser, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022) (same); Vargas v. Jennings, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020) (same).  Accordingly, Petitioner's ongoing detention without a bond hearing before an Immigration Judge to determine whether he is a risk of danger to the community or a flight risk is in violation of the Due Process Clause of the Fifth Amendment.

## IV.      CONCLUSION & RECOMMENDATION

The Court concludes that Respondents are violating Petitioner's due process rights by detaining him purportedly under § 1225(b)(2). The Court finds that Petitioner is detained pursuant to § 1226(a), and as such, he is entitled to a bond hearing before a neutral arbiter wherein the Government must establish that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

For the foregoing reasons, the Court hereby RECOMMENDS that the petition be GRANTED.  The District Court has previously ordered a bond hearing be provided to Petitioner. If Respondents have not done so by the time of this order, the Court recommends Petitioner be immediately released.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within ten (10) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. Id. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not

consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:  **March 9, 2026**                              /s/ *Sheila K. Oberto*
                                              UNITED STATES MAGISTRATE JUDGE